IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Riverside Dental of Rockford, Ltd., | ) | |
| | ) | |
| Plainitff, | ) | Case No. 20 CV 50284 |
| | ) | |
| vs. | ) | |
| | ) | |
| Cincinnati Insurance Company, | ) | Judge Philip G. Reinhard |
| | ) | |
| Defendant. | ) | |

**ORDER**

    For the reasons stated below, defendant's motion to dismiss [9] is granted. The complaint is dismissed without prejudice. Any amended complaint shall be filed on or before February 16, 2021.

**STATEMENT-OPINION**

    Plaintiff, Riverside Dental of Rockford, Ltd., an Illinois corporation with its principal place of business in Illinois brought this action in state court against defendant, The Cincinnati Insurance Company, an Ohio corporation with its principal place of business in Ohio. Defendant filed notice of removal [1] premised on diversity of citizenship jurisdiction. 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds $75,000. Jurisdiction is proper. The complaint seeks a declaratory judgment (Count I), alleges breach of contract (Count II), and asks for attorney fees, costs, and an amount in excess of the judgment as allowed by 215 ILCS 5/155 (Count III). Defendant moves to dismiss [9].

    Plaintiff is a dental office located in the state of Illinois. Plaintiff purchased a commercial property insurance policy ("Policy") from defendant. The Policy includes among its forms and endorsements a Building and Personal Property Coverage Form (FM 101 05 16) ("Property Form") and a Business Income (And Extra Expense) Coverage Form (FA 213 IL 05 16) ("Business Income Form"). Both these forms contain "Civil Authority" additional coverage provisions obligating defendant, under certain conditions, to pay plaintiff for actual loss of "Business Income" and necessary "Extra Expense" "caused by action of civil authority that prohibits access to the 'premises'."

    In March 2020, the Governor of Illinois, in response to the Covid-19 pandemic, issued executive orders ("Governor's Orders") requiring Illinois dental offices to cease providing services identified by the Governor as non-essential. From March 17, 2020 through May 11, 2020, plaintiff was forced by the Governor's Orders to postpone all work deemed non-essential. Of the services plaintiff provides in its dental practice, those identified by the Governor as non-essential account for approximately 90% of plaintiff's business. Compliance with the Governor's Orders caused a substantial loss of income to plaintiff. Plaintiff filed a claim under

1

the Policy with defendant for its loss of business income caused by complying with the Governor's orders. Defendant denied plaintiff's claim because it determined that coverage was unavailable for the claimed loss.

Plaintiff then brought this action in Illinois state court. Defendant removed the case to this court and now moves to dismiss plaintiff's complaint, as allowed by Federal Rule of Civil Procedure 12(b)(6), for "failure to state a claim upon which relief can be granted." This case presents an interesting and important issue arising from the coronavirus spread worldwide and civil authority actions in response. E.g., Oral Surgeons, P.C. v. The Cincinnati Ins. Co., No. 20 CV 222, 2020 WL 5820552 (S.D. Iowa 9/29/2020); Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London, No. 20 CV 1605, 2020 WL 5791583 (M.D. Fla. 9/28/2020); Douglas Berry, Coivd-19—When Civil Authorities Takeover Are You Covered?, IRMI, https://www.irmi.com/articles/expert-commentary/when-civil-authorities-take-over-are-you-covered; Julie Steinberg & Leslie Scism, Insurers Face Big Payouts to U.K. Businesses Over Covid Disruptions, Wall Street Journal (Jan.16, 2021), https://www.wsj.com/articles/insurers-face-big-payouts-to-u-k-businesses-over-covid-disruptions-11610713995?mod=itp_wsj&ru=yahoo.

"A claim is the aggregate of operative facts which give rise to a right enforceable in the courts." Sojka v. Bovis Lend Lease, Inc., 686 F.3d 394, 399 (7th Cir. 2012) (quotation marks and citations omitted). The claim plaintiff is asserting is that defendant had a contractual duty under the Policy's Civil Authority coverage provisions to pay plaintiff's insurance claim for business income loss caused by the Governor's Orders[1]; that defendant breached that duty when it denied plaintiff's claim as not being within the coverage provided by the Policy's Civil Authority coverage provisions; and that this breach of contractual duty damaged plaintiff by depriving it of the benefit of its bargain— receiving payment from defendant to cover the amount of plaintiff's business income loss "caused by action of civil authority" that prohibited access to plaintiff's business premises.

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must meet the Fed. R. Civ. P. 8(a)(2) requirement that it contain a "short and plain statement of the claim showing that the pleader is entitled to relief." If the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level, the Rule 8(a)(2) requirement is met. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). On a motion to dismiss, the court must determine whether the complaint contains "enough fact to raise a reasonable expectation that discovery will reveal evidence" to support liability for the alleged wrongdoing. Id. at 556. A plaintiff "may plead itself out of court by pleading facts that establish an impenetrable defense." Tamayo v. Blagojevich, 526 F.3d 1074, 1087 (7th Cir. 2008).

There is no dispute that the complaint gives defendant fair notice of what the claim is and the grounds upon which it rests. The dispute is whether the complaint plausibly suggests that

---

[1] Plaintiff makes clear in its brief that the only claim pled in its complaint concerns defendant's duty to plaintiff under the Civil Authority coverage provisions of the Policy.

2

plaintiff has a right to relief above the speculative level on that claim. Defendant argues plaintiff has no right to relief on its claim because, as a matter of law, the complaint shows defendant has no contractual duty to pay for any loss plaintiff suffered as a result of plaintiff's compliance with the Governor's Orders. The complaint includes a copy of the Policy and the Governor's Orders as exhibits.

The Policy's Business Income Form contains the following relevant provisions:

**SECTION A. COVERAGE**

\* \* \*

**1. Business Income**

**a.** We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss.

\* \* \*

**3.a. Covered Causes of Loss**[2]

Covered Causes of Loss means direct "loss" unless the "loss" is excluded or limited in this Coverage Part. Dkt # 10-1. p. 27.

**5. Additional Coverages**

The Additional Coverages in Paragraphs **5.a** through **5.e** are included within and not additional "Business Income" and Extra Expense Limits of Insurance.

\* \* \*

**b. Civil Authority**

When a Covered Cause of Loss causes direct damage to property other than Covered Property at the "premises", we will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the

---

[2] The Business Income Form incorporates the Property Form's Covered Causes of Loss provision, paragraph **3.a** of which is set forth here.

action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority coverage for "Business Income" will begin immediately after the time of the first action of civil authority that prohibits access to the "premises" and will apply for a period of up to 30 consecutive days from the date on which such coverage began.

Civil Authority coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the "premises" and will end 30 consecutive days after the date of that action; or when your Civil Authority coverage for "Business income" coverage ends, whichever is later.

Dkt # 10-1, p. 116.

\* \* \*

### SECTION F. DEFINITIONS

**1.** "Business Income" means the:

**a.** Net Income (Net profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses sustained, including payroll.

\* \* \*

**6.** "Loss" means accidental physical loss or accidental physical damage.

\* \* \*

**10.** "Premises" means the Locations and Buildings described in the Declarations.

Dkt # 10-1, pp. 122-23.

The Policy's Property Form contains the following relevant provisions:

### SECTION A. COVERAGE

\* \* \*

### 5. b. (3) Civil Authority

When a Covered Cause of Loss causes damage to property other than Covered Property at a "premises", we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:

**(a)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

**(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage or

4

continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Dkt # 10-1, pp. 40-41.

**SECTION G. DEFINITIONS**

\* \* \*

**13.** "Premises means the Locations and Buildings described in the Declarations."[3]

Dkt # 10-1, P. 61.

Under Illinois law, the construction of the provisions of an insurance policy is a question of law. Nicor, Inc. v. Associated Electric and Gas Insurance Services, Ltd., 860 N.E. 2d 280, 285 (Ill. 2006). The Illinois Supreme Court sets out the process for construing an insurance contract as follows:

> "A court's primary objective is to ascertain and give effect to the intention of the parties whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract.
>
> The words of a policy should be accorded their plain and ordinary meaning. Where the provisions of a policy are clear and unambiguous, they will be applied as written unless doing so would violate public policy. That a term is not defined by the policy does not render it ambiguous, nor is a policy term considered ambiguous merely because the parties can suggest creative possibilities for its meaning. Rather, ambiguity exists only if the term is susceptible to more than one reasonable interpretation.
>
> Because insurance contracts are issued under given circumstances, they are not to be interpreted in a factual vacuum. A policy term that appears unambiguous at first blush might not be such when viewed in the context of the particular factual setting in which the policy was issued. Governing legal authority must, of course, be taken into account as well, for a policy term may be considered unambiguous where it has acquired an established legal meaning. Where ambiguity does exist, the policy will be construed strictly against the insurer, who drafted the policy and liberally in favor of coverage for the insured."

Id. at 286 (citations omitted).

An examination of the Civil Authority coverage provisions set out above shows that for plaintiff to be covered for loss of Business Income and Extra Expense under those provisions, the following conditions must all be met:

---

[3] Plaintiff's dental office is the "premises" under this definition and the identical definition in the Business Income Form set out above.

5

(1) a Covered Cause of Loss must have caused damage[4] to property other than Covered Property at plaintiff's dental office;

(2) a civil authority must have taken action that prohibited access to plaintiff's dental office;

(3) the civil authority's action must have prohibited access to the area immediately surrounding the damaged property as a result of the damage;

(4) the civil authority must have taken the action in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage; and

(5) the action of the civil authority must have caused plaintiff to sustain the actual loss of "Business Income" and/or necessary Extra Expense.

If any one of these conditions is absent, then coverage is unavailable under the Civil Authority coverage provisions. Taking the complaint's allegations as true and its attached exhibits as accurate, condition (2) is absent and, therefore, plaintiff has failed to state a claim for its loss of Business Income and Extra Expense under the Civil Authority coverage provisions of the Policy.[5]

Civil Authority coverage under the Policy depends on an action by a civil authority that "prohibits access" to plaintiff's dental office. The Policy does not define either "access" or "prohibit" so these words are "accorded their plain and ordinary meaning." Nicor, 860 N.E.2d at 286. "Access" is defined as "permission, liberty, or ability to enter, approach, or pass to and from a place or to approach or communicate with a person or thing." Meriam-Webster Dictionary, "Access", https://www.merriam-webster.com/dictionary/access. "Prohibit" is defined as "to forbid by authority; "to prevent from doing something." Meriam-Webster Dictionary, "Prohibit", https://www.merriam-webster.com/dictionary/prohibit. Does the complaint plausibly suggest that the Governor's Orders forbade or prevented the ability to enter plaintiff's dental office?

Order 2020-10, issued on March 20, 2020, included dental offices in its definition of Health Care and Public Health Operations and allowed individuals to leave their residence to work for or obtain services at dental offices. Dkt # 14-4, p.35. Order 2020-19, issued April 1, 2020, required dental offices to cancel or postpone elective surgeries and procedures. Dkt # 14-4, pp. 48-49. On May 11, 2020, the Illinois Department of Public Health issued guidance allowing dental offices to resume services that previously had been required to be cancelled or postponed. Dkt # 14-4, p. 68.

The Governor's Orders, which are included as exhibits to the complaint, did not forbid or prevent the ability to enter plaintiff's dental office. The Governor's Orders limited the types of services that could be provided at plaintiff's dental office for several weeks. This limitation on services that could be provided caused plaintiff a substantial loss of revenue. But the Civil Authority coverage provisions require the civil authority to prohibit access to the

---

[4] "Direct damage" in the Business Income Form's provision.
[5] Because resolution of this issue requires dismissal of the complaint, the court will not discuss the other issues raised by the parties.

premises for an insured's Business Income loss to be recoverable. The complaint's allegations do not allege entry to plaintiff's dental office was prohibited by the Governor's Orders and the text of Governor's Orders attached to the complaint do not contain language prohibiting access to dental offices. On the contrary, the Governor's Orders allow access to dental offices for essential services. Plaintiff's Business Income loss is not covered under the Civil Authority coverage provisions of the policy at issue in this case because the Governor's Orders did not prohibit access to plaintiff's dental office.

Plaintiff argues it has alleged the Governor's Orders "ordered that all non-essential businesses must cease" and that "elective procedures must be cancelled or postponed." Dkt # 12, p. 15. It contends its complaint directly alleged that the Governor's Orders "clearly prohibited access by ordering non-essential business to cease and by ordering people to stay home." Id. It argues its complaint "specifically alleges that 'Governor Pritzker's Order restricts access to areas immediately surrounding [plaintiff's] premises; in fact, it restricts access across the entire State.' (Complaint ¶ 22). The Governor ordered all individuals living within the State of Illinois to 'stay at home or place of residence' and further ordered that 'non-essential business and operations must cease.' (Complaint, Ex. B, EO 2020-10). The Complaint alleges that '[plaintiff] was forced by the Shutdown Orders to postpone all work deemed non-essential. This 'non-essential' work accounts for approximately 90% of [plaintiff's] business." Id.

However, as noted above, the Governor's Orders do not prohibit access to plaintiff's dental office. Order 2020-10 allowed individuals to work and receive services at dental offices. Order 2020-19 required elective surgeries and procedures to be cancelled or postponed. Emergency procedures were still allowed. Plaintiff alleges approximately 90% of its business was "non-essential" which means approximately 10% of its business was not required to be cancelled or postponed. While the type of services plaintiff could provide to individuals were limited by the Governor's Orders, access to the premises was not prohibited. The Governor's Orders allowed individuals access to the premises to receive and to provide essential services.

Sandy Point Dental, PC v. The Cincinnati Insurance Co., No. 20 CV 2160, 2020 WL 5630465, * 1 (N.D. Ill. Sept. 21, 2020), is in accord with this analysis. In Sandy Point, the court analyzed a civil authority provision in light of Illinois coronavirus orders. The Sandy Point court addressed a civil authority coverage provision which, for civil authority coverage to be triggered, required that "orders of civil authority must 'prohibit access to the 'premises' due to direct physical 'loss' to the property, other than at the 'premises', caused by or resulting from a Covered Cause of Loss.'" Sandy Point found that "while coronavirus orders have limited plaintiff's operations, no order issued in Illinois prohibits access to plaintiff's premises. Indeed, plaintiff concedes that dental offices were deemed essential businesses for emergency and non-elective work. Consequently, plaintiff has failed to allege that access to its premises was prohibited by government order, and its claim for civil authority coverage fails." Id. at * 3 (citation omitted). Though it also analyzed other policy language, Sandy Point found (like this court finds above) that the failure to allege that access to the premises was prohibited—rather than limited—by government order was enough to preclude the plaintiff's claim for civil authority coverage.

7

Because there is no coverage under the Civil Authority provisions, there is no claim under 215 ILCS 5/155. See Illinois State Bar Ass'n Mutual Ins. Co. v. Cavenagh, 983 N.E.2d 468, 479 (Ill. App. 2012). "Section 155 allows for 'an extracontractual remedy' of attorney fees and costs for an insurer's 'unreasonable and vexatious' refusal to comply with its policy obligations." Id. However, where the policy does not cover the claim, a section 155 claim is properly dismissed. Id.

Plaintiffs normally should be given leave to amend after dismissal of an initial complaint. Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago, 786 F.3d 510, 518 (7th Cir. 2015). If plaintiff wishes to file an amended complaint, it may do so on or before February 16, 2021.

For the foregoing reasons, defendant's motion to dismiss [9] is granted. The complaint is dismissed without prejudice. Any amended complaint shall be filed on or before February 16, 2021.

DATE: 1/19/2021                                          ENTER:

*Philip G. Reinhard*

United States District Court Judge

Electronic Notices. (LC)